UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

AAILYAH EAVES-LEANOS,                                                                                    PLAINTIFF
Administratrix of the Estate of James Kennedy Eaves,
On behalf of herself and all others similarly situated

v.                                                                                          CIVIL ACTION NO. 3:07-CV-18-S

ASSURANT, INC., et al.                                                                                  DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the court upon the motion of the defendant, Citibank (South Dakota), N.A.[1], and Citigroup Inc. (collectively "Citibank"), to compel arbitration and stay proceedings pending arbitration (DN 30)[2]. Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, Citibank seeks to compel arbitration on an individual basis of the claims asserted against it by the plaintiff Aaliyah Eaves-Leanos ("Eaves-Leanos"), Administratrix of the Estate of James Kennedy Eaves ("Eaves").

In her complaint, Eaves-Leanos alleges that Eaves had consumer credit cards issued by the defendants, Bank of America, N.A. and FIA Card Services, N.A. (collectively "Bank of America"), Credit First National Association, and Citibank. Eaves-Leanos further alleges that Eaves purchased insurance on all of these cards which provided coverage that would pay credit card payments and

---

[1] Citibank (South Dakota) N.A., was erroneously referred to in the complaint as Citibank, N.A.

[2] Citibank has attached to its motion numerous decisions from courts in other jurisdictions in which motions to compel arbitration were granted, and requests that this court take judicial notice of these authorities. The Plaintiff objects to this request (DN 73). We will sustain the objection, but note however, that we are not constrained from considering them for their persuasive effect.

balances in the event of the holder's loss of income, disability, or death. The insurance is alleged to have been underwritten and administered by the defendants Assurant, Inc.[3], Union Security Life Insurance Co., and American Security Insurance Co. (collectively referred to as "Assurant").

According to Eaves-Leanos, when Eaves died on August 1, 2003, at the age of sixty-seven, certain insurance benefits alleged to have been purchased by Eaves were denied on the basis that he exceeded the policies' maximum allowable age at the time of his death. But, because the defendants allegedly continued to charge and collect premiums on Eaves' consumer credit accounts for certain insurance benefits after he reached the policies' maximum age, Eaves-Leanos complains that the defendants engaged in deceptive trade practices, breach of contract, unfair claims settlement practices, and fraud, entitling her to damages, including restitution and disgorgement due to unjust enrichment. Eaves-Leanos also purports to assert class claims on behalf of all people situated similarly to Eaves.

Eaves relationship with the Citibank began in December 1994, when he first opened a Citibank credit card account. Eaves' credit card account was governed by a written card agreement ("Card Agreement"). The Card Agreement for Eaves' account stated that the account "shall be governed by South Dakota and federal law." While the original Card Agreement did not contain an arbitration provision, it did expressly allow for Citibank to change the terms of the agreement, provided that it followed specified procedures. In accordance with the procedures, Citibank mailed Eaves a "Notice of Change in Terms Regarding Binding Arbitration to Your Citibank Card Agreement" (the "Arbitration Change-in-Terms") with his October 2001 billing statement. The new terms provided that either party could elect mandatory binding arbitration as follows:

---

[3] Assurant, Inc. is no longer a defendant in this action, having been dismissed by order of this court (DN 107).

**ARBITRATION:**
**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**

*Agreement to Arbitrate:*
Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

*Claims Covered:*
**What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they week. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law. Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other represntative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

**Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

*   *   *

**Broadest Interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

\*   \*   \*

> **Who can be a party?** Claims must be brought in the name of an individual party or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. . . .

(Emphasis in original). In addition to the terms set forth above, the arbitration agreement also included terms: (i) excluding small claims court actions; (ii) allowing for the parties to choose one of three arbitration firms, the American Arbitration Association ("AAA"), JAMS, or the National Arbitration Forum ("NAF") and; (iii) allowing for the reimbursement and/or advancement of arbitration fees.

Citibank printed the following message on Eaves' October 2001 billing statement, alerting him to the enclosed Arbitration Change-in-Terms:

> PLEASE SEE THE ENCLOSED CHANGE IN TERMS NOTICE FOR IMPORTANT INFORMATION ABOUT THE BINDING ARBITRATION PROVISION WE ARE ADDING TO YOUR CITIBANK CARD AGREEMENT.

The next month, Citibank printed a message reminding him of the Arbitration Change-in-Terms which stated:

> WITHIN THE LAST 30 DAYS YOU SHOULD HAVE RECEIVED AN IMPORTANT NOTICE ABOUT ADDING BINDING ARBITRATION TO YOUR CITIBANK CARD AGREEMENT. IF YOU WOULD LIKE ANOTHER COPY PLEASE CALL THE CUSTOMER SERVICE NUMBER LISTED ABOVE.

The Arbitration Change-in-Terms provided that the arbitration agreement would become effective on the day after the Statement/Closing date indicated on Eaves' November 2001 billing statement. Eaves was expressly given the opportunity to opt out of the arbitration agreement by notifying Citibank in writing within 26 days of the date indicated on his November 2001 billing

statement. Eaves did not elect to opt out. Had he chosen to opt out, he would have been able to continue to use his account under the terms as they existed before the Arbitration Change-in-Terms, until the end of his current membership year. At that time his account would have been closed.

Citibank contends that because Eaves failed to opt out, Eaves-Leanos' claims against it are subject to the arbitration agreement. Generally, arbitration clauses are enforceable under the Federal Arbitration Act (FAA). 9 U.S.C. §1, *et seq*. The FAA provides that a written agreement to arbitrate disputes arising out of a transaction involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Buckeye Check Cashing, Inc. v. Cardagena*, 546 U.S. 440, 443-44, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006); *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). The FAA also provides for a stay of proceedings when an issue is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement. 9 U.S.C. §§ 3 and 4; *Javitch*, 315 F.3d at 624.

Eaves-Leanos contends that state law, and not the FAA, is applicable in determining whether the Citibank arbitration agreement is enforceable. Under the conventional application of the supremacy clause and rules of statutory construction, the FAA, a federal statute, would preempt any state law, insofar as the state law contravenes the FAA. However, Congress created an exception to the usual rules of preemption when it enacted the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015. The McCarran-Ferguson Act operates to save state statutes, enacted "for the purpose of regulating the business of insurance," from federal preemption and leaves the regulation of the business of insurance to the states. The McCarran-Ferguson Act provides that:

> No Act of Congress shall be construed to invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insurance. . . unless such Act specifically relates to the business of insurance.

15 U.S.C. § 1012.

Both Kentucky and South Dakota have enacted statutes adopting versions of the Uniform Arbitration Act.[4] These statutes provide that arbitration agreements are unenforceable when they are contained in "insurance contracts" or "insurance policies."[5] Eaves-Leanos argues that these statutes are laws enacted "for the purpose of regulating the business of insurance." She argues enforcement of the Citibank arbitration agreement pursuant to the FAA would result in the FAA's "invalidat[ing], impair[ing], or supersed[ing]" these statutes. She also argues that the FAA is not an act of Congress which "specifically relates to the business of insurance." Consequently, Eaves-

---

[4] Although Eaves-Leanos disputes the applicability of South Dakota law, arguing instead that the operative law is that of Kentucky, she nonetheless acknowledges that both Kentucky and South Dakota have adopted similar versions of the Uniform Arbitration Act.

[5] KRS 417.050 provides:

> A written agreement to submit any existing controversy to arbitration or a provision in written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract. **This chapter does not apply to. . .**
>
> (2) **Insurance contracts**. (Emphasis added).

S.D. Codified Laws §§ 21-25A-1, 3 provides:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. . .
>
> **This chapter does not apply to insurance policies and every provision in any such policy requiring arbitration or restricting a party thereto or beneficiary thereof from enforcing any right under it by usual legal proceedings in ordinary tribunals or limiting the time to do so is void and unenforceable**. (Emphasis added).

Leanos contends that the McCarran-Ferguson Act is applicable and that it operates to save both Kentucky's and South Dakota's arbitration statutes from FAA preemption. According to Eaves-Leanos, under either Kentucky or South Dakota law, the arbitration agreement contained in Eaves' Citibank Card Agreement is unenforceable. We disagree. The Kentucky and South Dakota statutes may be laws "enacted. . . for the purpose of regulating the business of insurance." However, neither statute is applicable to this case.

In, *National Home Ins. Co. v. King*, 291 F.Supp.2d 518 (E.D. Ky. 2003), it was argued that the Kentucky arbitration statute should invalidate an arbitration clause contained in a warranty agreement. Although the warranty agreement in *King* differs from the Card Agreement in this case, the court's analysis is instructive:

> The heart of this dispute is the question of whether Kentucky Revised Statute 417.050 applies to the contracts between NHIC, Dickerson, and the Kings, so as to render the arbitration clause contained therein unenforceable. . . . Therefore, the question becomes: is the warranty agreement an "insurance contract" for purposes of KRS 417.050?

291 F.Supp.2d at 524; *See also Buck Run Baptist Church, Inc. v. Cumberland Sur. Ins. Co., Inc.*, 983 S.W.2d 501, 503-04 (addressing whether a surety contract was an "insurance contract" as defined in KRS 417.050). Thus, in order for either the Kentucky or South Dakota statute to render the arbitration agreement unenforceable, we must first find that the Card Agreement in which the arbitration agreement is contained is an "insurance contract" or "insurance policy."

The Supreme Court of Kentucky has stated that "an insurance policy is a contract of indemnity whereby the insurer agrees to indemnify the insured for any loss resulting from a specific event." *Buck Run Baptist Church*, 983 S.W.2d at 504. The Supreme Court of South Dakota has noted that the defining feature of an insurance contract is the shifting of the risk of loss. *South Dakota Div. of Ins. v. Northwest Corp.*, 581 N.W.2d 158, 161 (S.D. 1998), *superseded by statute on*

*other grounds*, SDCL § 15-6-52(a), *as recognized in Parmley v. Hildebrand*, 630 N.W.2d 509,512 (S.D. 2001). Moreover, courts have recognized that "insurance does not involve the extension of credit." *King*, 291 F.Supp.2d at 525.

Eaves-Leanos specifically alleges that the insurance provided to Eaves was Assurant's product. Whatever role Citibank may have played in delivering the insurance product to Eaves, the Card Agreement between Citibank and Eaves is not a contract of indemnity and does not provide for the shifting of the risk of loss. The Card Agreement is nothing more than an agreement for an extension of credit and, and cannot properly be considered an "insurance contract" or "insurance policy."[6] Therefore, the McCarran-Ferguson Act does not operate to save from FAA preemption the provisions of the Kentucky and South Dakota statutes that render arbitration agreements unenforceable in "insurance contracts" and "insurance policies."

"Before compelling an unwilling party to arbitrate a court must engage in a limited review to determine whether the dispute is arbitrable; meaning that [1] a valid agreement to arbitrate exists between the parties and [2] that the specific dispute falls within the substantive scope of that agreement." *Bratt Enterprises, Inc. v. Noble International, Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Javitch*, 315 F.3d at 624. Thus, a party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).

---

[6]*See Hagan v. Greenpoint Credit Corp.*, No. 07-17-KKC, 2007 WL 2258866 (E.D.Ky Aug. 3, 2007) (distinguishing a note/security agreement from a related insurance policy and finding the arbitration provision contained in the note/security agreement enforceable).

Eaves-Leanos' claims are based on charges for insurance premiums made to Eaves' Citibank account. As such, her claims fall within the scope of the Citibank arbitration agreement. Eaves-Leanos, however, challenges the validity of the arbitration agreement. While the FAA governs the enforceability of the arbitration agreement according to its terms, state law governs the determination of whether a valid agreement to arbitrate exists between the parties. *Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 345 (6th Cir. 2006). In evaluating the validity of an arbitration agreement, courts apply ordinary state law principles governing the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Citibank argues that pursuant to Eaves' Card Agreement, South Dakota law applies to determine whether a valid arbitration agreement exists. Eaves-Leanos argues that applicable law is that of Kentucky. Because this case is before the court on federal diversity jurisdiction, we will apply Kentucky's choice of law rules in determining the applicable state law. *See Andersons, Inc. v. Consol Inc.*, 348 F.3d 496, 501 (6th Cir. 2003).

Under Kentucky law, § 187 of the Restatement (Second) of Conflict of Laws governs contractual choice of law provisions. *See Bank of New York v. Janowick*, 470 F.3d 264, 271 n.3 (6th Cir. 2006) (citing *Wallace Hardware Co. Inc., v. Abrams*, 223 F.3d 382, 397 (6th Cir. 2000)). Under § 187, the parties' choice of law should be honored unless (1) "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or (2) "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest." *Id.* at 398 (quoting Restatement (Second) of Conflict of Laws § 187). Insomuch as Citibank is a national bank located in South Dakota, South Dakota has a substantial relationship to the parties and the transaction. Eaves-Leanos asserts that Kentucky has the greater interest. Assuming this assertion is correct, she has not identified how

application of South Dakota law would be contrary to a fundamental policy of Kentucky. She argues that application of South Dakota law would contravene Kentucky's public policy of applying its own law in the interpretation of insurance contracts. However, as we have previously noted, the arbitration agreement at issue is not contained in an insurance contract.

Relying on Restatement (Second) of Conflict of Laws § 187, Comment b, Eaves-Leanos argues that because the Card Agreement is a contract of adhesion, this court should refuse to apply its choice-of-law provision.[7] According to Comment b, refusal to apply a choice-of-law provision contained in an adhesion contract is warranted only if its application would result in substantial injustice. As we will discuss, because we find the Citibank arbitration agreement enforceable under either South Dakota or Kentucky law, application of the choice-of-law provision would not result in substantial injustice. Accordingly, South Dakota law applies to determine the validity of the Citibank arbitration agreement.

Eaves-Leanos contends that the Citibank arbitration agreement is unconscionable. South Dakota law defines unconscionable contracts as "[o]ne-sided agreements whereby one party is left without a remedy for another party's breach." *Baldwin v. Nat'l College*, 537 N.W.2d 14, 17 (S.D. 1995) (citing *Rozeboom v. Northwestern Bell Tel. Co.*, 358 N.W.2d 241, 244 (S.D. 1984)). Kentucky similarly law defines an unconscionable contract as "one which no man in his senses, not

---

[7]Restatement (Second) Conflict of Laws § 187, Comment b, provides:

A factor which the forum may consider is whether the choice-of-law provision is contained in an "adhesion" contract, namely one that is drafted unilaterally by the dominant party and then presented on a "take-it-or-leave-it" basis to the weaker party who has no real opportunity to bargain about its terms. Such contracts are usually prepared in printed form, and frequently at least some of their provisions are in extremely small print. Common examples are tickets of various kinds and insurance policies. Choice-of-law provisions contained in such contracts are usually respected. Nevertheless, the forum will scrutinize such contracts with care and will refuse to apply any choice-of-law provision they may contain if to do so would result in substantial injustice to the adherent.

under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335 (Ky.Ct.App. 2001). Both South Dakota and Kentucky distinguish between procedural unconscionability - whether the objecting party had a meaningful choice at the time of making the contract or was unfairly surprised by terms of the contract - and substantive unconscionability - whether the terms of the agreement are unreasonable or grossly favor one side. *See Johnson v. John Deer Co.*, 306 N.W.2d 231, 237 (S.D. 1981); *Conseco Fin.*, 47 S.W.3d at 343.

Eaves-Leanos contends that the process by which Citibank amended the Card Agreement to include the arbitration agreement was procedurally unconscionable. She contends that Eaves lacked a meaningful choice because the arbitration agreement is an adhesion contract drafted by a party of superior bargaining strength and presented to him on a take it or leave it basis. She also contends that because the arbitration agreement was included in Eaves' billing statement he might not have seen it, and even if he did see it, he would have been unfairly surprised.

South Dakota expressly authorizes a credit card issuer to change the terms of any credit card agreement. *See* S.D. Codified Laws § 54-11-10. In addition the Attorney General of South Dakota has issued an opinion expressly authorizing the addition of an arbitration agreement to a credit card agreement in the manner used by Citibank. *See* South Dakota Attorney General Opinion dated May 7, 2002 from Harold H. Deering, Jr., South Dakota Assistant Attorney General, to Richard R. Duncan, South Dakota Director of Banking. Thus, under South Dakota law, the process by which Citibank amended the Card Agreement to include the arbitration agreement is not procedurally unconscionable. Assuming, as Eaves-Leanos contends, Kentucky law were to apply, she has identified no Kentucky authority which would render the arbitration agreement procedurally unconscionable. Indeed, Eaves had a meaningful choice as to whether to accept the arbitration

- 11 -

agreement in that he was provided with the opportunity to "opt out" and failed to do so. The addition of the arbitration agreement was not unfair in that the Arbitration Change-in-Terms was included along with his credit card billing statement and was explicitly referred to on the actual billing statement itself. The arbitration agreement was explicitly referenced on the billing statement for the following month as well. *See Conseco Fin.* 47 S.W.3d at 343 (finding that even if a contract containing an arbitration provision was properly characterized as an adhesive contract, the inclusion of the arbitration clause was not abusive or unfair). Therefore, under Kentucky law, the addition of the arbitration agreement is also not procedurally unconscionable.

Eaves-Leanos also contends that the arbitration agreement is substantively unconscionable because it requires that arbitration proceed on an individual, non-class basis. No South Dakota court has directly addressed whether a class action waiver in an arbitration agreement is substantively unconscionable.[8] However, while the Citibank arbitration agreement does preclude Eaves-Leanos from pursuing her claims through a class action, it does not limit the type of individual claims she may bring, or the damages she may seek. Therefore, the arbitration agreement does not leave her without a remedy, and is not substantively unconscionable under South Dakota law. Eaves-Leanos has again identified no Kentucky authority indicating that a class action waiver renders an arbitration agreement substantively unconscionable. Assuming, Kentucky law were applicable, the class action waiver cannot be said to render the arbitration agreement substantively unconscionable. *See Lockman v. J.K. Harris & Co., LLC*, No. 3:06-CV-258-H, 2007 WL 734951 at *4 (W.D.Ky. Mar 6, 2007) (finding that an arbitration provision that was determined to preclude plaintiffs from pursuing their claims on a class basis was not substantively unconscionable under Kentucky law).

---

[8] At least one other court has concluded that such a waiver is not unconscionable under South Dakota law. *See Egerton v. Citibank, N.A.* No. CV036907DSF, 2004 WL 1-57739 at *3 (C.D. Cal. Feb. 18, 2004).

Eaves-Leanos, however, argues that the costs to arbitrate her individual claim are prohibitive and effectively bar her from bringing a claim capable of economic success.[9] The Supreme Court has recognized that "the existence of large arbitration costs could preclude a litigant from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree*, 531 U.S. at 90. Where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92. In *Morrisson v. Circuit City Stores, Inc.*, 317 F.3d 646(6th Cir. 2003), the Sixth Circuit held that a plaintiff must be given the opportunity to demonstrate that potential costs of arbitration are enough to deter a substantial number of similarly situated potential litigants from seeking to vindicate their federal statutory rights in the arbitral forum. 317 F.3d at 663. This approach, which looked to the possible "chilling effect" of an arbitration cost-splitting provision on potential litigants, as opposed to its effect merely on the actual plaintiff in a given case, was followed in *Cooper v. MRM Investment Company*, 367 F.3d 493, 510-11 (6th Cir. 2004). Eaves-Leanos urges us to apply the analysis set forth in *Morrison* and *Cooper* to determine whether the Citibank arbitration agreement imposes prohibitive costs.

In *Stutler v. T.K. Constructors Inc.*, 448 F.3d 343 (6th Cir. 2006), the Sixth Circuit stated:

> *Green Tree, Morrison* and *Cooper* are limited by their plain language to the question of whether an arbitration clause is enforceable where federal statutorily provided rights are affected. In this case, no federally protected interest is at stake. The Stutlers, through diversity jurisdiction, seek to enforce contractual rights provided by state law. As a result, *Morrison* and *Cooper* simply do not apply. Under the FAA,

---

[9] Eaves-Leanos attaches Affidavits prepared by her counsel which relate conversations with AAA and JAMS regarding the potential costs of arbitration, and which provide her counsel's estimation as to the time required to arbitrate her claims. Eaves-Leanos also attaches Affidavits of five Kentucky attorneys which state that her claims do not allege damages in an amount sufficient to justify the expense and time that would be required to proceed with arbitration or litigation on an individual basis. Citibank has objected to the Affidavits and requests the court to disregard them (DNs 87, 88, 89). We will deny the objections and consider the Affidavits.

the Stutlers must look to contract defenses available in Kentucky rather than those found in federal common law.

*Stutler*, 448 F.3d at 346 (emphasis added). The Sixth Circuit further stated:

> Even if *Morrison* and *Cooper* were not explicitly limited to the arbitration of federal statutory rights, *Erie R. Co. v. Tompkins* forbids their application to a question governed by state law. . . Accordingly, the Stutlers' ability to avoid their agreement with T.K. is governed by the generally applicable contract laws of the Commonwealth of Kentucky. We cannot, under *Erie*, invalidate that agreement by reference to the federal common law established by *Green Tree*, *Morrison* and *Cooper*.

*Id.* (citation omitted). The *Stutler* court then determined that, under Kentucky law, the prohibitive cost of arbitration was not a defense to the enforcement of an otherwise valid arbitration agreement.

Eaves-Leanos, like the plaintiffs in *Stutler*, does not assert a federal statutory claim against Citibank. Accordingly, *Green Tree, Morrison,* and *Cooper*, are inapplicable to this case as well. Insomuch as we have determined that South Dakota law governs the interpretation of the Citibank arbitration agreement, Eaves-Leanos must show that South Dakota contract defenses would operate to invalidate the arbitration agreement. She has provided no South Dakota authority recognizing "cost prohibitiveness" as a defense to the enforcement of an arbitration agreement.

In *Stutler*, the concurrence noted that Kentucky law has not foreclosed the possibility of recognizing a cost-related claim of unconscionability. *Stutler*, 448 F.3d at 349 (concurrence). Therefore, to the extent that either South Dakota or Kentucky would recognize the cost of arbitration as a factor in determining whether an arbitration agreement is unconscionable, we will undertake this determination.

With respect to the cost of arbitration, the Citibank arbitration agreement provides:

> **Who Pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator

- 14 -

> and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines that there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, regardless of which other party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

Eaves-Leanos asserts that the value of her claims against Citibank could range between $300 to $19,000. She contends that if she is required to arbitrate her claims, under the AAA Commercial Rules and the JAMS Comprehensive Arbitration Rules and Procedures, the administrative and arbitrator's fees which she would incur could exceed $45,000. She also contends that if forced to arbitrate her claims on an individual basis, no attorney would be willing to take her case. Eaves-Leanos overlooks that in consumer-related disputes, the AAA caps the fees a consumer must pay at $125 for a claim of less than $10,000, or $375 for claims between $10,000 and $75,000. *See* AAA Supplementary Rules for Consumer-Related Disputes. JAMS also caps the fee required to be paid by consumers at $250. *See* JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses Minimum Standards of Procedural Fairness. In addition, the AAA and NAF rules also provide that a party's fees may be deferred or reduced in the case of hardship. *See* AAA Commercial Arbitration Rules R-49; NAF Rule 45. Moreover, Eaves-Leanos asserts a claim under the Kentucky Consumer Protection Act, which authorizes an award of attorneys' fees and costs to the prevailing party. KRS 367.220(3). Thus, the court finds the cost to arbitrate her claims against Citibank are not prohibitive, and do not render the arbitration agreement unconscionable.

Eaves-Leanos also contends that Citibank's request that this court compel arbitration is, in essence, a motion to sever and transfer her claims against Citibank to an arbitration panel. Enforcing an arbitration agreement is not a rule of trial and forum convenience. The fact that Eaves-Leanos

has included additional parties in this action has no bearing on whether her claims against Citibank are subject to arbitration.

For the above stated reasons, the court will grant Citibank's motion to compel arbitration and will stay the action with respect to Citibank pending completion of arbitration. A separate order will be entered herein this date in accordance with this opinion

January 7, 2008

**Charles R. Simpson III, Judge**
**United States District Court**