UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

AAILYAH EAVES-LEANOS,                                                                                 PLAINTIFF
Administratrix of the Estate of James Kennedy Eaves,
On behalf of herself and all others similarly situated

v.                                                                           CIVIL ACTION NO. 3:07-CV-18-S

ASSURANT, INC., et al.                                                                              DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court upon the motion of the defendants, Union Security Life Insurance Company ("USLIC"), American Security Insurance Company ("ASIC"), American Bankers Life Assurance Company of Florida ("ABLAC"), and American Bankers Insurance Company of Florida ("ABIC") (collectively the "Insurers"), to compel arbitration and stay proceedings pending arbitration (DN 120). The Insurers seek to compel the plaintiff Aaliyah Eaves-Leanos ("Eaves-Leanos"), Administratrix of the Estate of James Kennedy Eaves ("Eaves"), to submit all claims asserted in this action against the Insurers relating to the Citibank[1] and Bank of America[2] credit insurance programs to arbitration on an individual basis, and to stay all proceedings in this court pending completion of those arbitrations.

## BACKGROUND

Eaves-Leanos alleges that Eaves had consumer credit cards issued by defendants Citibank, Bank of America, and CFNA[3]. Eaves-Leanos further alleges that Eaves purchased insurance on all of these cards which provided coverage that would pay credit card payments and balances in the event of the

---

[1] Citibank (South Dakota), N.A. and Citigroup, Inc. are collectively referred to as "Citibank."

[2] Bank of America, N.A. and FIA Card Services, N.A. are collectively referred to as "Bank of America."

[3] Credit First National Association is referred to as "CFNA"

cardholder's loss of income, disability, or death.  The insurance is alleged to have been underwritten and administered by the Insurers.

According to Eaves-Leanos, when Eaves died on August 1, 2003, at the age of sixty-seven, certain insurance benefits alleged to have been purchased by Eaves were denied on the basis that he exceeded the policies' maximum allowable age at the time of his death.  But, because the defendants allegedly continued to charge and collect premiums on Eaves' consumer credit accounts for certain insurance benefits after he reached the policies' maximum age, Eaves-Leanos complains that the defendants engaged in deceptive trade practices, breach of contract, unfair claims settlement practices, and fraud, entitling her to damages, including restitution and disgorgement due to unjust enrichment.  Eaves-Leanos also purports to assert class claims on behalf of all people situated similarly to Eaves.

Eaves' credit card agreement with Citibank contains an arbitration agreement which provides:

> **What Claims are subject to arbitration?**  All Claims relating to your account, a prior related account, or our relationship are subject to arbitration....
>
> **Whose Claims are subject to arbitration?**  Not only ours and yours, but also Claims made... against anyone connected with us..., such as... an... agent, representative....

Eaves' credit card agreement with Bank of America contains a similar arbitration agreement which provides:

> Any claim or dispute ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or any prior Agreement or your account... shall be resolved by binding arbitration....
>
> For purposes of this Arbitration Section, "we" and "us" means [Bank of America], its... agents and assigns or any and all of them.  Additionally, "we" or "us" shall mean any third party providing benefits, services, or products in connection with the account (including but not limited to... credit insurance companies... ) if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us.

In accordance with these arbitration agreements, this court previously granted motions filed by both Citibank and Bank of America requesting this court to compel Eaves-Leanos' claims against them to arbitration and to stay proceedings with respect to them pending arbitration.

The Insurers have now filed a motion to compel arbitration and stay proceedings pending arbitration. The Insurers do not contend that Eaves-Leanos' claims against them are subject to arbitration based upon arbitration agreements contained in the insurance policies they issued to Eaves. Rather, they seek to compel arbitration based upon the arbitration agreements contained in Eaves' Citibank and Bank of America credit card agreements. Accordingly, the Insurers seek to compel Eaves-Leanos to submit all claims asserted in this action against them relating to the Citibank and Bank of America credit insurance programs to arbitration.[4] The sole issue before this court is whether the Insurers, as nonsignatories to the credit card agreements, can compel Eaves-Leanos, who has filed suit on behalf of a signatory to the credit card agreements, to submit her claims to arbitration based on the arbitration agreements contained in the credit card agreements.[5]

## DISCUSSION

The Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

---

[4] The Insurers seek to compel arbitration only with respect to Eaves-Leanos' claims against them related to the Citibank and Bank of America credit insurance programs because Eaves' CFNA credit card agreement did not contain an arbitration agreement.

[5] Eaves-Leanos raises additional issues in her response to the Insurers' motion. This court, however, has previously considered these issues. Eaves-Leanos argues that the arbitration agreements contained in the Citibank and Bank of America credit card agreements are invalid. This court has previously found both arbitration agreements to be valid. Eaves-Leanos also argues that the Insurers' motion to compel arbitration amounts to a motion to sever and transfer which should be denied. This court has previously rejected this argument with respect to both Citibank and Bank of America and similarly rejects this argument with respect to the Insurers. Eaves-Leanos also argues that her claims against the Insurers are not subject to arbitration because the arbitration agreements are contained in "insurance contracts." This court, however, has previously determined that the Citibank and Bank of America credit card agreements are not "insurance contracts."

revocation of any contract." 9 U.S.C. § 2. "Before compelling an unwilling party to arbitrate a court must engage in a limited review to determine whether the dispute is arbitrable; meaning [1] that a valid agreement to arbitrate exists between the parties and [2] that the specific dispute falls within the substantive scope of that agreement." *Bratt Enterprises, Inc. v. Noble International, Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003). Eaves-Leanos does not argue that her claims against the Insurers fall outside the scope of the Citibank and Bank of America arbitration agreements. Rather, she contends that no valid agreement to arbitrate exists between the Insurers and herself because the Insurers were not signatories to either the Citibank or Bank of America credit card agreements.

The Sixth Circuit has recognized five theories binding nonsignatories to arbitration agreements: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) equitable estoppel. *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) (citing *Thomson-CSF v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). The Insurers contend that they are entitled to enforce the Citibank and Bank of America arbitration agreements and compel Eaves-Leanos to arbitrate her claims against them relating to the Citibank and Bank of America credit insurance programs under the theories of equitable estoppel and agency.

In *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999), the court explained the equitable estoppel theory as it applies to a nonsignatory to an arbitration agreement:

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory. When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise[] out of and relate[] directly to the [written] agreement," and arbitration is appropriate. Second, "application of equitable estoppel is warranted. . . when the signatory [to the contract containing the arbitration clause] raises allegations of. . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Otherwise, "the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."

177 F.3d at 947 (citations omitted); *acccord Hagan v. Greenpoint Credit Corp.*, 2007 WL 2258866 at *8 (E.D.Ky Aug. 3, 2007); *Liedtke v. Frank*, 437 F.Supp.2d 696, 699 (N.D.Ohio 2006).

The proper scope of the terms "rely on" and "make reference to" as set forth in *MS Dealer's* first prong involves "review[ing] the estoppel question under the rubric of the 'duties' arising from the agreement that the plaintiff claimed the defendant breached." *Chastain v. Union Security Life Ins. Co.*, 502 F.Supp.2d 1072, 1078 (C.D.Cal. 2007) (citing *American Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 627-28 (4th Cir. 2006)). "[E]stoppel is appropriate if in substance [the signatory's underlying] complaint [is] based on the [nonsignatory's] alleged breach of the obligations and duties assigned to it in the agreement." *Id.* (quoting *Long*, 453 F.3d at 628).

In *Chastain,* the plaintiff purchased credit insurance policies from the defendant insurer through two credit cards which would cover the plaintiff's minimum monthly payments on his credit cards in the event the plaintiff were to become disabled and unable to make such payments. The plaintiff alleged that he became disabled and that the insurer failed to pay benefits under the insurance policies. The plaintiff sued the insurer for breach of the insurance contracts, declaratory relief under the insurance contracts, and fraud arising from representations related to the coverage contained in the insurance contracts. The insurance contract between the plaintiff and the insurer did not contain an arbitration agreement. However, the credit card agreements between the plaintiff and the credit card issuers did contain such an agreement. The insurer, as a nonsignatory, sought to compel arbitration of the plaintiff's claims under the arbitration agreements contained in the credit card agreements. The *Chastain* court stated that although "the insurance contracts were created because Plaintiff had cardmember agreements and wished to insure against a later inability to pay that debt due to disability. . . the *duty* the insurer allegedly breached was the obligation to pay the promised insurance coverage. 502 F.Supp.2d at 1079. (emphasis in original). The *Chastain* court further stated that the plaintiff need not rely on a breach of any duty

- 5 -

created by the *cardmember agreement* to assert a claim that the insurer breached its duty to insure against potential loss. *Id* (emphasis in original).

Similarly, Eaves-Leanos' claims against the Insurers do not rely on a breach of any duty created by either the Citibank or Bank of America credit card agreements. Thus, her claims cannot be said to "rely on" or "make reference to" the terms of the Eaves' credit card agreements. *MS Dealer*, 177 F.3d at 947. Accordingly, the Insurers cannot enforce the Citibank and Bank of America arbitration agreements against Eaves-Leanos based on *MS Dealer's* first prong.

However, inasmuch as Eaves-Leanos has alleged "substantially interdependent and concerted misconduct" by the Insurers and both Citibank and Bank of America, the Insurers are entitled to enforce the arbitration agreements based on *MS Dealer's* second prong. 177 F.3d at 947. In *Chastain*, the court found that the plaintiff had not alleged substantially interdependent and concerted misconduct because the plaintiff's complaint contained only a single allegation that the insurer and the credit card companies "jointly marketed" the insurance policies. 502 F.Supp.2d at 1081. The court noted that: "(1) this single allegation does not rise to the level of 'substantial'; and (2) Plaintiff does not assert that the joint marketing was fraudulent." *Id.* Rather, the court noted that the plaintiffs entire complaint rests upon allegations against the insurer for the insurer's actions vis-a-vis the plaintiff. Additionally, and importantly, the plaintiff in *Chastain* did not name the credit card companies as defendants in the action and had not suggested any wrongdoing by the credit card companies in his complaint. *Id.* at 1081

Unlike the plaintiff in *Chastain*, Eaves-Leanos has named both Citibank and Bank of America as defendants in this action and has alleged that they engaged in wrongdoing along with the Insurers. Eaves-Leanos argues that the Insurers' liablity arises from their own individual conduct. However, in her First Amended Complaint, Eaves-Leanos argues that the Insurers "partnered" with Citibank and Bank of America to "market, solicit, and sell" their insurance products and that Citibank and Bank of America

acted as the Insurers' "agents" in conducting such activities.  She alleges that the actions of the Insurers and both Citibank and Bank of America were fraudulent and were designed to misrepresent the benefits provided by the insurance products.  Even a cursory review of Eaves-Leanos complaint reveals that she has alleged exactly the same wrongdoing and the same claims against the Insurers that she has alleged against both Citibank and Bank of America.  Moreover, she refers to the Insurers and both Citibank and Bank of America simply as "Defendants" throughout her First Amended Complaint.  *see Hagan*, 2007 WL 2258866 at *8 (noting that because the plaintiffs collectively refer to all defendants in the complaint simply as "the Defendants" it "appears that the Plaintiffs are alleging that the Defendants acted in some kind of concerted misconduct").  Thus, the court finds that Eaves-Leanos' complaint alleges the type of "substantially interdependent and concerted misconduct" contemplated by *MS Dealer's* second prong.  Accordingly, despite the fact that the Insurers were not signatories to either the Citibank or Bank of America credit card agreements, the doctrine of equitable estoppel forces Eaves-Leanos to arbitrate her claims against the Insurers.[6]

For the above stated reasons, the court will grant the Insurers' motion to compel arbitration and will stay proceedings with respect to claims against the Insurers relating to the Citibank and Bank of America credit insurance programs.  Inasmuch as no arbitration agreement exists in Eaves' credit card agreement with CFNA, the court will not stay proceedings against the Insurers relating to the CFNA credit insurance program.

A separate order will be entered herein this date in accordance with this opinion.

---

[6] Because the court finds that the Insurers are entitled to enforce the Citibank and Bank of America arbitration agreements against Eaves-Leanos under the theory of equitable estoppel, the court need not consider the Insurers' additional arguments related to the theory of agency.